UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JAMES RAHEEM RAINS,

          Plaintiff,          Case No. 2:20-cv-171

v.          Honorable Hala Y. Jarbou

UNKNOWN PENEGOR et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer

Unknown Penegor, Prison Counselor Eric Stromer, Grievance Coordinator T. Hamel, MDOC Director Heidi Washington, and Warden Kris Taskila.

Plaintiff alleges that Defendant Penegor has a habit of joking with inmates, but Plaintiff does not engage in that behavior. Plaintiff told Defendant Penegor that he doesn't joke with police, to which Defendant Pengor responded, "Fuck you Rains." (Compl., ECF No. 1, PageID.3.) On July 23, 2020, Defendant Penegor refused to give Plaintiff his lunch tray. On July 26, 2020, Defendant Penegor dangled Plaintiff's lunch tray in front of him and told him to beg. When Plaintiff refused, Defendant Penegor said, "Well, guess you're not hungry." (*Id.*)

On July 30, 2020, Plaintiff was asleep when Defendant Penegor was passing out breakfast trays. Plaintiff was awakened by the sound of his slot opening and saw Defendant Penegor place milk on the slot. Plaintiff got up and moved toward the door, but Defendant Penegor removed the milk stating that he had the wrong cell. When Plaintiff asked about his breakfast, Defendant Penegor said, "You were asleep." (*Id.*) Later that day, Defendant Penegor refused to give Plaintiff his lunch tray.

On July 31, 2020, Plaintiff stopped Defendant Penegor when he was passing out breakfast trays and asked why he was taking Plaintiff's food. Defendant Penegor stated that he did not like Plaintiff and would choose when Plaintiff ate or showered. Defendant Penegor refused to allow Plaintiff to shower on that date. On August 3, 2020, Defendant Penegor again refused to give Plaintiff his breakfast. Plaintiff asked when his shower cleaning day was and Defendant Penegor showed him the list, but said that as long as he was working on Plaintiff's wing, Plaintiff would not get one. Defendant Penegor did not give Plaintiff his lunch. When Defendant Penegor noticed another inmate giving Plaintiff some food, he told the inmate to stop feeding Plaintiff.

On August 4, 8, and 11, 2020, Defendant Penegor took Plaintiff's meal trays or showers or both. Plaintiff states that he has another lawsuit against healthcare at AMF because he is allergic to soy and that is one of the main foods in his religious diet. Plaintiff states that as a result, he barely has enough food to sustain him, so that Defendant Penegor's refusal to give him his meals on a regular basis puts extra strain on his already stressed mental, physical, and emotional state.

Plaintiff claims that he has asked Defendant Stromer to talk to his supervisors on Plaintiff's behalf on several occasions, but Defendant Stromer responded that his supervisors were not going to move Penegor off the unit for some minor issues. When Plaintiff explained about the denial of meals and showers, Defendant Stromer told him to "look in the mirror" and to "deal with it." (*Id.*) Plaintiff states that during this time-period, he was improperly kept on modified access to the grievance procedure. Plaintiff sent written complaints and letters to Defendants Taskila and Washington, but he never received a response.

Plaintiff appears to be asserting claims under the First and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

**II.     Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendants Stromer, Washington, and Taskila

Plaintiff alleges that Defendants Stromer, Washington, and Taskila failed to respond to his complaints about Defendant Penegor and failed to properly supervise Defendant Penegor. Plaintiff also arguably suggests that Defendants interfered with Plaintiff access to the grievance process,

Plaintiff has no due process right to file a prison grievance or to successfully complete the grievance process. The courts repeatedly have held that there exists no

4

constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff's remaining allegations against Defendants Stromer, Washington, and Taskila, are limited to claims that Defendants failed to respond to Plaintiff's complaints about Defendant Penegor and failed to properly supervise Defendant Penegor. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Stromer, Washington, and Taskila engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## IV. Defendant Hamel

Plaintiff's only claim against Defendant Hamel is that he erroneously kept Plaintiff on modified access to the grievance procedure during the pertinent time-period. Plaintiff attaches a copy of a memorandum dated November 22, 2019, stating that he was being placed on modified access status for a period of ninety-days, as a result of his abuse of the prison grievance process. (ECF No. 1-1, PageID.11.) Plaintiff was instructed to obtain grievance forms by writing to the grievance coordinator, clearly explaining his complaint, and including all pertinent information. If the grievance coordinator concurred with the request, a form would be forwarded to Plaintiff to submit the approved grievance. *Id.*

Plaintiff also attaches a memorandum dated February 27, 2020, extending Plaintiff's placement on modified access for an additional thirty days because he had filed four grievance forms in violation of MDOC Policy Directive 03.02.130 while on modified access. Plaintiff was again instructed that if he felt he had a legitimately grievable issue, he should request a grievance form from the grievance coordinator. (ECF No. 1-1, PageID.13.) On May 13, 2020, Plaintiff's modified access status was extended because he had filed three improper grievances in violation of the procedure outlined in Policy Directive 03.02.130. (ECF No. 1-1, PageID.14.) Plaintiff's modified access status was extended again on June 12, 2020, because he had filed four improper grievances, on July 21, 2020, because he had filed three improper grievances, and again on August 14, 2020, because he had filed five improper grievances. (ECF No. 1-1, PageID.14-17.)

6

As discussed, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt*, 459 U.S. at 467; *Walker v.,* 128 F. App'x at 445; *Argue*, 80 F. App'x at 430. Defendant Hamel therefore did not deprive Plaintiff of a liberty interest by restricting access to the grievance process.

Nor did Plaintiff's placement on modified access violate his rights under the First Amendment. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive (PD) 03.02.130 ¶ MM (eff. Mar. 18, 2019). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy. (*Id.* at ¶¶ MM, J(3).) As with any grievance

rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ I. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Finally, to the extent that Plaintiff complains about Defendant Hamel's failure to provide him a satisfactory response to his grievances, the First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

For these reasons, Plaintiff fails to state a claim against Defendant Hamel.

## V. Eighth Amendment

Plaintiff appears to be claiming that Defendant Penegor's actions violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

8

indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir.

9

2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

In this case, Plaintiff states that he was stressed physically and emotionally by the deprivation of twelve to fifteen meals[1] over a period of eighteen days. However, Plaintiff does not allege that his health suffered as a result of the deprivation or that the meals he did receive were inadequate to sustain his health.

Plaintiff's allegations concerning Defendant Penegor's refusal to allow him showers also fall short of demonstrating an Eighth Amendment violation. The constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell,

---

[1] Plaintiff is vague about the number of meals he was given on August 4, 2020, August 8, 2020, and August 11, 2020. (ECF No. 1, PageID.3.)

10

or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb.1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97B1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. , 2020 WL 5742748, at *5 (W.D. Mich. Sept. 20, 2020) (denial of two showers, one week apart, does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (discussing deprivation of single shower); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff] for showers and gym time because [Plaintiff]

11

was not at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

Plaintiff does not allege that Defendant Penegor prevented him from maintaining basic hygiene. He alleges nothing more than that Penegor denied him a shower on, at most, four occasions in a ten-day period. Under the foregoing authorities, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation.

## VI.    Retaliation

Finally, the Court notes that Plaintiff fails to state a claim for retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff did not engage in protected conduct. Plaintiff claims that Defendant Penegor subjected him to harassment after Plaintiff told him that he did not joke around with police. Not all speech constitutes protected conduct for purposes of a retaliation claim. *See Thaddeus-X*, 175 F.3d at 390-91 (recognizing only that speech related to a prisoner's right to access the courts or speech seeking redress of grievances amounts to protected conduct). Plaintiff's speech had nothing to do with his right to access the courts or seek redress of grievances; he simply told Defendant Penegor that he did not want to engage in jovial banter with him, because he did

not talk to "the police." (Compl., ECF No. 1, PageID.3.)  Such a statement does not constitute protected First Amendment conduct.  As a result, Penegor's alleged actions could not have been motivated by a desire to retaliate for the exercise of protected conduct.  Instead, it appears that, as Defendant Penegor told Plaintiff, he simply did not like Plaintiff.  Plaintiff's retaliation claim therefore is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 14, 2020                              /s/ HALA Y. JARBOU
                                                                                                     Hala Y. Jarbou
                                                                                                     United States District Judge